UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PETER L. CAVANAUGH,**

      **Plaintiff,**

v.                                                                             Case No. 04-71738

                                              HONORABLE DENISE PAGE HOOD

**COMCAST ADVERTISING SALES,
INC., a foreign corporation, COMCAST
CORPORATION OF FLINT, INC., f/k/a
COMCAST CABLEVISION CORP., a foreign
corporation, and HAROLD DAVIS, a/k/a
CORKY DAVIS, an individual,**

      **Defendants.**
_____/

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment filed June 15, 2005. Plaintiff filed a Response on July 18, 2005. Defendants filed a Reply on August 3, 2005.

**II.    STATEMENT OF FACTS**

Plaintiff, Peter Cavanaugh, is a former employee of Defendant Comcast Advertising Sales, Inc., Defendant Comcast Corporation, and Defendant Comcast of Flint, Inc. ("Comcast"). (Compl. ¶¶11-12). Defendant Harold Davis held the position of Detroit General Sales Manager for Defendant Comcast Advertising Sales, and was later promoted to Vice President/Comcast Advertising Sales/North Midwest. *Id.* ¶ 6. Defendants offered Plaintiff an employment position and

he accepted it on December 8, 2000. *Id.* ¶¶ 10-11. Between December 11, 2000 and March 2003, the Plaintiff was never the subject of any form of professional discipline. *Id.* ¶ 14.

In October of 1998, Plaintiff was diagnosed with clinical depression. *Id.* ¶ 15. Plaintiff made Marla Downs, the Director of Advertising Sales/Comcast/Midwest, aware of his ongoing treatment for depression, when he began his employment with the Defendants. *Id.* ¶ 16.

Plaintiff alleges that Defendant Davis attempted to undermine him at work. *Id.* ¶¶ 17-19. When Plaintiff met with Kevin Cuddihy, the Vice president of Comcast Advertising Sales/Midwest to discuss Defendant Davis' conduct, Mr. Cuddihy refused to investigate Defendant Davis' conduct. (Compl. ¶ 20). Plaintiff alleges that Defendant Davis continued to display hostility towards him in the months that followed. *Id.* ¶ 22. Plaintiff also alleges that he was repeatedly passed over for promotions within Advertising Sales, even though he was more qualified than the other candidates. *Id.* ¶ 23. Around this time, Plaintiff informed Defendant Davis that he was being treated for depression which was being treated with daily medication. *Id.* ¶ 24.

Plaintiff's first disciplinary action arose out of a meeting on or about March 15, 2003, where Defendant Davis attempted to have the Plaintiff sign a Compensation Letter Agreement, saying "As we discussed before...." (Compl. ¶¶ 28-29). Plaintiff immediately interrupted Defendant Davis, responding "I've never seen that thing until now and you Goddamn well know it." *Id.* ¶ 29. Plaintiff was informed that he was going to be written up because of his unprofessional conduct in "yelling at a superior." *Id.* ¶ 30. Shortly thereafter, the Plaintiff met with Kim Vernon, the Human Resources Manager, to discuss the March 15, 2003 meeting. *Id.* ¶ 32. At this time the Plaintiff informed Ms. Vernon that he was undergoing regular psychotherapy with powerful psychotropic drugs for Manic Depression. *Id.* Plaintiff was presented with a Corrective Action Notice, in

response to the March 15, 2003 meeting, on or about March 21, 2003. *Id.* ¶ 33.

By December 24, 2002, the Plaintiff had commenced professional psychiatric treatment and psychological counseling for his depression, and had received several changes in his prescribed medication. (Compl. ¶ 36). Plaintiff continued to inform his superiors of the course of his treatment. *Id.* ¶ 37. On April 24, 2003, Ms. Waynick, the Human Resources Director, received a complaint about the Plaintiff stating that he was very rude and unprofessional in a business meeting. (Def.'s Mot. Summ. J. at 7). On May 5, 2003, the Plaintiff received a final written warning,(Comp. ¶ 38), stating that he had multiple incidents where he lost his temper, became belligerent and angry, raised his voice, used profanity, and was otherwise unprofessional. *Id.* ¶ 39.

On or about May 13, 2003, the Plaintiff requested a medical leave of absence. (Compl. ¶ 40). The Plaintiff returned to work on May 19, 2003, and was informed that he was suspended pending further investigation. *Id.* ¶ 41. On or about June 9, 2003, the Plaintiff was terminated. *Id.* ¶ 42. On or about January 12, 2004, Mary Jane Dickson was hired as Plaintiff's replacement. *Id.* ¶ 44. Plaintiff's Complaint was filed on May 7, 2004.

**III.    STANDARD OF REVIEW**

The standard that must be satisfied to secure a dismissal via summary judgment is high. Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such

a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

### IV.   APPLICABLE LAW & ANALYSIS

Defendant seeks summary judgment on all seven counts named in the Complaint, specifically: (1) age discrimination in violation of the Age Discrimination in Employment Act; (2) disability discrimination in violation of the Americans with Disabilities Act; (3) age discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act; (4) disability discrimination in violation of MCL §§ 37.1102 and 37.1202; (5) violation of ERISA; (6) wrongful discharge in violation of Michigan public policy; and (7) intentional infliction of emotional distress. In the Response, Plaintiff voluntarily dismisses Counts I, III, V, VI, and VII, leaving only Counts II and IV, the disability discrimination claims, to consider on summary judgment.

Plaintiff alleges two counts of disability discrimination, one in violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the other in violation of the Michigan Persons with Disabilities Civil Rights Act, ("PWDCRA"), Mich. Comp. Laws. § 37.1102, *et seq.*. The Americans with Disabilities Act prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The PWDCRA prohibits employers from terminating employees because of a disability. Specifically, an employer "shall not... discharge or otherwise discriminate against an individual with

respect to compensation or the terms, conditions, or privileges of employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. 37.1202(1)(b). The PWDCRA is interpreted in accordance with the ADA. *Joostberns v. United Parcel Services, Inc.*, 2006 WL 41189 *13 (6th Cir. 2006).

A plaintiff claiming disability discrimination under the ADA may establish such discrimination by direct evidence that the employer relied on the plaintiff's disability when making the employment decision. *Merrill v. Burke E. Porter Machinery Co.*, 159 Fed.Appx. 676, 678 (6th Cir. 2005)(unpublished opinion), citing *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Where the plaintiff cannot introduce direct evidence of discrimination, the plaintiff must establish a prima facie case of discrimination. *Id.* Once a plaintiff establishes a prima facie case, the burden is shifted to the employer to provide a legitimate, nondiscriminatory reason for the action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973); *Sullivan v. River Valley School District*, 197 F.3d 804, 810 (6th Cir. 1999). If a reason is articulated, the plaintiff must then show that the proffered reason is a pretext for discrimination. *Id.*

A plaintiff establishes a prima facie case of disability discrimination by showing that: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential function of his job, with or without reasonable accommodation; and (3) he has suffered an adverse employment decision as a result of the disability. *Sullivan*, 197 at 810. In order to establish a prima facie case of discrimination under the PWDCRA, a plaintiff must show: "(1) that [plaintiff] is disabled as defined by the PWDCRA, (2) that the disability is unrelated to [plaintiff's] ability to perform the duties of a particular job, and (3) the [plaintiff] was discriminated against in one of the ways described in the statute." *Lown v. JJ Eaton Place*, 235 Mich.App. 721, 727 (1999), *citing*

*Rollert v. Department of Civil Serv.*, 228 Mich.App. 534, 538 (1998).

"Proof of a disability is a threshold requirement to prove a violation of the ADA." *Gerton v. Verizon South Inc.*, 145 Fed.Appx. 159, 164 (6th Cir. 2005). Under the ADA, the determination of whether a plaintiff has a disability or not is an individualized inquiry. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). Disability under the ADA is defined as:

> The term "disability" means, with respect to an individual –
>
> **(A)** a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> **(B)** a record of such an impairment; or
>
> **(C)** being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff does not argue that he has a disability, but rather he argues that the Defendants perceived him to have a disability.

In order to show disability discrimination based on a perceived or regarded as disability, the plaintiff must show (1) the employer mistakenly believed that a person has a physical impairment that substantially limits one or more major life activities; or (2) an employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities. *Dunaway v. Ford Motor Company*, 134 Fed.Appx. 872, 876 (6th Cir. 2005) (unpublished opinion). The EEOC regulations define "regarded as having such an impairment" as meaning:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. 1630.2(l)(1)-(3).

Plaintiff asserts that his disability discrimination claims are based on perceived disability not actual disability. Defendants argue that the Plaintiff has failed to show that he is disabled or that the Defendants perceived him to be disabled. Plaintiff argues that the Defendants perceived him to be disabled. Plaintiff further asserts that the "revelation of his more serious mental condition led directly to termination," and that anger management was suggested for his "Irish temper." (Pl.'s Resp. at 21). Plaintiff does not, however, provide any evidence to show that he was perceived to be disabled by the Defendants or that he was terminated due to his revelation of the more serious mental condition. Nor has Plaintiff shown how he was treated by the Defendants as having a disability. Defendants knew that the Plaintiff had been diagnosed with clinical depression since the beginning of his employment. (Compl. ¶ 16). Plaintiff did not have any disciplinary problems between December of 2000 and March of 2003. *Id.* ¶ 14. Plaintiff disclosed his diagnosis of Manic Depression after he was told that he would be written up for his behavior at a March 15, 2003 meeting. As Defendants knew of that Plaintiff was diagnosed with clinical depression and he was told he would be written up before his disclosure of his diagnosis for Manic Depression, Plaintiff has not shown that he was terminated because the Defendant's perceived him to be disabled. Since the Plaintiff has failed to show that the Defendants perceived him to be disabled and terminated him because of that perception, he cannot prove a prima facie case of disability discrimination.

Since Plaintiff has not shown that he was disabled or that the Defendants perceived him to be disabled, as required in a disability discrimination claim, the Court need not proceed to the burden shifting analysis under *McDonnell Douglas*. Summary judgment is appropriate for Plaintiff's disability discrimination claims.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment **[Docket No. 19, filed June 15, 2005]** is GRANTED.

       /s/ Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: March 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager